IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ELIZABETH TRAVIS,

   Plaintiff,

      v.

WAYNE DRUMMOND, Individually
and in his Official Capacity as Director
of the DeKalb County Department of
Family & Children Services, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:04-CV-710-TWT

OPINION AND ORDER

This is a civil rights action.  It is before the Court on the Motions for Summary

Judgment of Defendant Wayne Drummond [Doc. 46], Defendant D'Anna Liber [Doc.

47], and Defendant Walker Solomon, II [Doc. 48].  For the reasons set forth below,

the Defendants' Motions for Summary Judgment are GRANTED.

I.  BACKGROUND

Plaintiff Elizabeth Travis was employed as a case manager for the DeKalb

County Department of Family and Children Services ("DeKalb County DFCS").  On

or about June 27, 2003, Travis was assigned to investigate claims of alleged child

abuse concerning two-year-old Kyshawn Punter.  Kyshawn remained in the custody

of DFCS during the investigation into the allegations.  At a July 2, 2003 hearing in

Juvenile Court, Travis recommended that Kyshawn be returned to his home.  The

Juvenile Court Judge agreed to Travis's recommendation.  After the hearing, Travis

completed the documents necessary to close the file.  However, on July 10, 2003,

Kyshawn's stepfather was arrested on the June abuse complaint.  Following the arrest,

the case was assigned to another case worker, who remained the case worker until

Kyshawn's death on August 14, 2003.  He died as a result of physical abuse by his

stepfather.

Shortly after Kyshawn's death, the Georgia Division of Family and Children

Services conducted a review of the case.  Defendant Wayne Drummond, then-Director

of the DeKalb County DFCS, and Defendant D'Anna Liber, an investigator with the

Special Investigations Unit of the Georgia Division of Family and Children Services,

participated in the review.  On August 20, 2003, an article concerning the case

appeared in the Atlanta Journal and Constitution in which Liber was credited with

stating that "the case workers failed in several ways to protect the child."  (Liber Aff.,

Ex. B.)  According to the article, Liber stated that Travis was wrong to recommend

returning Kyshawn to his home and did not present crucial evidence that might have

persuaded the Juvenile Court Judge to keep him in the State's care.  (Id.)  Liber stated

that even after the judge approved the recommendation to return Kyshawn to his

home, Travis should have continued to monitor the situation rather than closing the file.  (Id.)  Liber also indicated that Travis violated DFCS policy by making a number of decisions without a supervisor's approval and by closing a case where the potential of risk was assessed as "moderate."  (Id.)  Travis contends that these statements were false and misleading.

In addition to the August 20, 2003 article, Travis claims that Liber made false statements in an August 27, 2003 article.  The August 27, 2003 article allegedly incorrectly stated that Travis had been fired.  However, the article merely attributes the statement to unnamed DFCS officials and does not name Liber.  (Travis Dep., Ex. 5.)  Liber denies ever stating that Travis had been fired from her position with the DeKalb County DFCS, Liber Aff. ¶ 6, and Travis concedes as much, Pl.'s Resp. to Def. Liber's Statement of Material Facts not Genuinely in Issue ¶ 8.  In addition, although Travis alleges that Drummond also made false and misleading statements concerning Travis's performance during the Kyshawn Punter case, she has not identified any public statements made by Drummond.  Drummond denies making any public statements regarding Travis.[1]  (Drummond Aff. ¶ 3-4.)

---

[1]In her Amended Complaint, Travis also alleged that DeAlvah Simms, head of the Georgia Office of the Child Advocate, made false public statements.  The Court has previously dismissed all claims against Simms.  (Order, Nov. 15, 2004.)

Travis filed suit pursuant to 42 U.S.C. § 1983.  She alleges that her due process

rights were violated because she was never given a name clearing hearing after the

false public statements made by Drummond[2] and Liber damaged her professional

reputation and prevented her from continuing to work in her chosen profession.

Travis also asserts claims against Defendant Walker Solomon, II, in his official

capacity as the Director of the DeKalb County DFCS.  The Defendants move for

summary judgment.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and

affidavits submitted by the parties show that no genuine issue of material fact exists

and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The court should view the evidence and any inferences that may be drawn in the light

most favorable to the nonmovant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59

(1970).  The party seeking summary judgment must first identify grounds that show

the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S.

317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond

---

[2]Travis originally brought suit against Drummond in both his individual and official capacities.  Drummond, however, no longer serves as Director of DFCS. Accordingly, Travis filed an Amended Complaint asserting her claims against Drummond in his individual capacity only.

the pleadings and present affirmative evidence to show that a genuine issue of material

fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III.  DISCUSSION

### A.      Defendants Drummond and Liber

Travis alleges that Drummond and Liber violated her due process rights by

making public statements falsely accusing her of negligence, malfeasance in office,

and suggesting possible criminal liability in connection with the death of Kyshawn

Punter.  As an initial matter, Travis acknowledges that Drummond was never served

with the complaint and summons nor did he waive service of process.  Accordingly,

she concedes that Drummond is entitled to summary judgment for insufficient service

of process.[3]  The Court also notes that Travis has not presented any evidence in

support of her claims against Drummond.  Nevertheless, as discussed fully below,

even if there was evidence of defamatory public statements and even if he had been

served properly, Drummond, like Liber, is entitled to summary judgment because

Travis has failed to establish the deprivation of a constitutional right.

In order to establish a due process claim, Travis must first demonstrate

deprivation of a liberty or property interest protected by the Due Process Clause.

---

[3]In his Answer to the Amended Complaint, filed May 17, 2004, Drummond
raised the defense of failure to serve.  Despite being provided with notice of the lack
of proper service, Travis made no effort to perfect service as to Drummond.

Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972).   The

Defendants maintain that Travis cannot show the deprivation of a protected interest.

Travis argues that the statements made by the Defendants subjected her to public

ridicule and damaged her professional reputation.   In Paul v. Davis, 424 U.S. 693,

701-02 (1976), the Supreme Court held that damage to reputation alone does not

constitute the deprivation of a liberty or property interest within the meaning of the

Due Process Clause.   See also Siegert v. Gilley, 500 U.S. 226, 233 (1991)

("Defamation, by itself, is a tort actionable under the laws of most States, but not a

constitutional deprivation.").   Rather, the Supreme Court stated that in order to

implicate a liberty or property interest protected by due process, the stigma resulting

from defamation by the government must be coupled with deprivation of "some more

tangible interests such as employment."   Paul, 424 U.S. at 701; Cannon v. City of

West Palm Beach, 250 F.3d 1299, 1302 (11th Cir. 2001) ("Essentially, a plaintiff

claiming a deprivation based on defamation by the government must establish the fact

of the defamation 'plus' the violation of some more tangible interest before the

plaintiff is entitled to invoke the procedural protections of the Due Process Clause.").

This established what is known as the "stigma-plus" test.   Cannon, 250 F.3d at 1302

(citing <u>Moore v. Otero</u>, 557 F.2d 435, 437 (5th Cir. 1977)[4]); <u>Von Stein v. Brescher</u>,

904 F.2d 572, 581 (11th Cir. 1990).  The "plus" element requires proof that state

action "significantly altered or extinguished 'a right or status previously recognized

by state law.'"  <u>Behrens v. Regier</u>, 422 F.3d 1255, 1260 (11th Cir. 2005) (<u>quoting</u>

<u>Paul</u>, 424 U.S. at 711); <u>see also</u> <u>Cypress Ins. Co. v. Clark</u>, 144 F.3d 1435, 1436 (11th

Cir. 1998) (stigma-plus standard "requires a plaintiff to show that the government

official's conduct deprived the plaintiff of a previously recognized property or liberty

interest in addition to damaging the plaintiff's reputation").  With regard to the "plus"

requirement, the Eleventh Circuit has stated that "[w]e do not think the law of this

Circuit has established that defamation occurring other than in the course of dismissal

from a job or in the termination or significant alteration of some other legal right or

status will suffice to constitute a deprivation sufficient to state a claim under section

1983."  <u>Cypress Ins. Co.</u>, 144 F.3d at 1437 (<u>quoting</u> <u>Von Stein</u>, 904 F.2d at 582.)

Therefore, in order to establish the deprivation of a liberty interest without due process

of law, a plaintiff must prove that: (1) a false statement (2) of a stigmatizing nature (3)

attending a governmental employee's discharge (4) was made public (5) by the

---

[4]In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

governmental employer (6) without a meaningful opportunity for employee name clearing.  <u>Cannon</u>, 250 F.3d at 1301.

The Court need not determine whether publicized statements made by the Defendants were false and stigmatizing because Travis has not shown any termination or alteration of a legal right or status necessary to establish the "plus" requirement. The Eleventh Circuit has made clear that the plus requirement is satisfied if the plaintiff shows "discharge or more." <u>Cannon</u>, 250 F.3d at 1303; <u>see</u> <u>Oladeinde v. City of Birmingham</u>, 963 F.2d 1481, 1486 (11th Cir. 1992) ("Here, no loss of income or rank occurred, and absent a discharge or more, injury to reputation itself is not a protected liberty interest.").  Travis, however, does not argue that the alleged defamatory statements were made incident to discharge, demotion, or loss of any tangible benefit.  <u>See</u> <u>Siegert</u>, 500 U.S. at 234 ("The alleged defamation was not uttered incident to the termination of Siegert's employment by the hospital, since he voluntarily resigned from his position at the hospital. . . ."). The record shows that although Drummond recommended that Travis be terminated from her employment, the DeKalb DFCS never discharged Travis.  Rather, Travis voluntarily retired.  (<u>See</u> Def. Liber's Mot. for Summ. J., Exs. F, H, & I.)  Although her Amended Complaint states that she was "forced to take early retirement," Am. Compl. ¶ 25, there is no evidence to support this assertion.  Quite to the contrary, in a letter to Drummond and

Jim Martin, then-Commissioner of the Georgia Department of Human Resources,

Travis's counsel expressly stated: "The retirement was not a forced retirement, but one

of her own choosing."  (Def. Liber's Mot. for Summ. J., Ex. J.)  Moreover, Travis

made the decision to retire long before she was notified of her proposed termination.[5]

(See Pl.'s Br. in Opp'n to Def. Solomon's Mot. for Summ. J., at 9; Def. Liber's Mot.

for Summ. J., Exs. D & E.)

Travis alleges that the damage to her reputation caused by the alleged

defamatory statements materially affected her ability to work in her chosen

profession.[6]  However, the Supreme Court has expressly rejected the notion that

damage to professional reputation and the impairment, even serious impairment, of

future employment opportunities constitutes a constitutional deprivation. Siegert, 500

U.S. at 234.  The Eleventh Circuit has similarly stated that "the deleterious effects that

flow directly from a sullied reputation, such as the adverse impact on job prospects,

are normally insufficient."  Smith ex rel. Smith v. Siegelman, 322 F.3d 1290, 1298

(11th Cir. 2003).  Accordingly, because Travis has only alleged damage to her

---

[5]Travis made clear that she is not seeking to retain her job.  (Pl.'s Br. in Resp. to Def. Liber's Mot. for Summ. J., at 5.)

[6]Despite this assertion, however, Travis has not identified any employment opportunities from which she was foreclosed due to the alleged defamatory statements.

professional reputation and not the "denial of a right or status previously recognized under state law," id. at 1296, she has failed to show the deprivation of a constitutionally protected liberty interest. Summary judgment for Liber and Drummond is warranted.

### B. Defendant Solomon

Travis also asserts her section 1983 claims against Defendant Solomon in his official capacity as the Director of the DeKalb County DFCS. A suit against a public official in his official capacity is the equivalent of a suit against the public entity of which the official is an agent. Hafer v. Melo, 502 U.S. 21, 25 (1991). Therefore, a suit against Solomon in his official capacity amounts to a suit against the DeKalb County DFCS. Solomon argues that the DeKalb County DFCS is an "arm of the State" and, thus, entitled to Eleventh Amendment immunity. Travis acknowledges that the DeKalb County DFCS is organized under and is a subdivision of the Georgia Department of Human Resources. (Am. Compl. ¶ 3; Pl.'s Br. in Opp'n to Def. Solomon's Mot. for Summ. J., at 11.) Nevertheless, she argues, without citing any authority, that the DeKalb County DFCS should be considered a county agency and not entitled to Eleventh Amendment immunity.

The Eleventh Amendment protects a State from being sued in federal court without the State's consent, including barring suits against the State by its own

citizens. Manders v. Lee, 338 F.3d 1304, 1308 n.8 (11th Cir. 2003). Eleventh

Amendment immunity also extends to bar suits in federal court against state agencies

and instrumentalities as well as state officials. Regents of the Univ. of Ca. v. Doe, 519

U.S. 425, 429 (1997); Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S.

274, 280 (1977). A state agency or instrumentality is entitled to Eleventh Amendment

immunity when the nature of the entity is such that it should be treated as an "arm of

the State." Regents of the Univ. of Ca., 519 U.S. at 429-30; see Mt. Healthy City Sch.

Dist. Bd. of Educ., 429 U.S. at 280. In order to determine whether an entity is an "arm

of the State," the court must assess the following factors: (1) how state law defines the

entity; (2) what degree of control the State maintains over the entity; (3) where the

entity derives its funds; and (4) who is responsible for judgments against the entity.

Manders, 338 F.3d at 1309.

In Bendiburg v. Dempsey, 707 F. Supp. 1318, 1330-34 (N.D. Ga. 1989), aff'd

in part and reversed in part on other grounds, 909 F.2d 463 (11th Cir. 1990), the

Northern District of Georgia thoroughly evaluated these factors as they relate to a

county DFCS and held that each county DFCS in Georgia is an "arm of the State."

First, the court found that each county DFCS was created by state law and that state

law defines their functions. Id. at 1331 (citing O.C.G.A. §§ 49-3-1(a), 49-3-6).

Additionally, the court pointed to the Georgia Public Assistance Act of 1965,

O.C.G.A. §§ 49-4-1 *et seq.*, as indicative of the manner in which state law defines the

county departments:

> The former statute defines the term "department" as used in the Georgia
> Public Assistance Act of 1965 (the Act) to include the State Department
> of Human Resources[7] as well as the county departments. O.C.G.A. §
> 49-4-2(1). Similarly, § 49-4-3 provides that the Act "shall be
> administered by the Department of Human Resources, including the
> county departments of family and children services acting under the
> direction and supervision of the Commissioner [of Human Resources]."
> O.C.G.A. § 49-4-3(b). These statutes strongly suggest that the county
> departments are instrumentalities of the State Department of Human
> Resources rather than separate county entities.

Bendiburg, 707 F. Supp. at 1331.

Second, the Bendiburg court found that the State exercises an extensive amount

of control over each county DFCS. Not only are the responsibilities of each DFCS

defined by state law and carried out under the supervision of the Department of

Human Resources, but the State also controls the personnel of each county DFCS.

Specifically, the county board members are appointed by the Commissioner of Human

Resources, O.C.G.A. § 49-3-2(a); the commissioner is authorized to promulgate rules

and regulations governing the selection of chairman and vice chairman of each county

board, O.C.G.A. § 49-3-3(a); and each director is appointed from the State Merit

---

[7]The Department of Human Resources is unquestionably a state agency. See
Rayburn ex rel. Rayburn v. Hogue, 241 F.3d 1341, 1343 n.3 (11th Cir. 2001); McCall
v. Department of Human Res., 176 F. Supp. 2d 1355, 1361 (M.D. Ga. 2001); Powell
v. Department of Human Res., 918 F. Supp. 1575, 1578 (S.D. Ga. 1996).

System register and may be removed from office by the State Personnel Board and State Merit System of Personnel Administration, O.C.G.A. § 49-3-7. Id. at 1331-32. Furthermore, the employees of each county DFCS are appointed subject to the approval of the Commissioner of Human Resources, O.C.G.A. § 49-3-4(a); their salaries are fixed pursuant to the salary schedule of the State Department of Human Resources, O.C.G.A. § 49-3-4(b); and employees may be transferred from one county to another by the Commissioner of Human Resources, O.C.G.A. § 49-3-4(c), indicating that they are not employed by a particular county. Bendiburg, 707 F. Supp. at 1332.

The Bendiburg court also found that the third and fourth factors, i.e.,where the entity derives its funds and who is responsible for judgments against the entity, weighed in favor of finding that a county DFCS is an "arm of the State." In particular, although counties may provide funding on a voluntary basis, most of the funding for a county DFCS consists of state and federal funds disbursed by the Department of Human Resources. See O.C.G.A. §§ 49-2-5, -9 to -11. Furthermore, the court presumed that the state would be responsible for satisfying any judgment against a county department. Bendiburg, 707 F. Supp. at 1333 (citing Harden v. Adams, 760 F.2d 1158, 1164 (11th Cir. 1985); Fouche v. Jekyll Island-State Park Auth., 713 F.2d

1518, 1521 (11th Cir. 1983)).  In light of its assessment of the factors, the court in

Bendiburg held that:

> [T]he county departments, including the defendant Cobb County
> Department of Family and Children Services, were created by state law
> to administer the public assistance programs of the Georgia Department
> of Human Resources and their respective counties; that they were
> established in each county of the state merely to facilitate the more
> efficient administration of these programs; and that they are therefore
> state rather than county entities for the purposes of eleventh amendment
> immunity.

Bendiburg, 707 F. Supp. at 1334.  This Court agrees with the thorough and well-

reasoned analysis of Bendiburg, and holds that the DeKalb County DFCS is an "arm

of the State."  See McCall v. Department of Human Res., 176 F. Supp. 2d 1355, 1362

(M.D. Ga. 2001); Powell v. Department of Human Res., 918 F. Supp. 1575, 1578-79

(S.D. Ga. 1996); see also Rayburn ex rel. Rayburn v. Hogue, 241 F.3d 1341, 1343 n.3

(11th Cir. 2001) (noting that DFCS is a branch of the Department of Human

Resources).  Thus, Eleventh Amendment immunity bars the section 1983 claims

against Defendant Solomon in his official capacity.  Summary judgment is warranted.

## IV.  CONCLUSION

For the reasons set forth above, Defendant Wayne Drummond's Motion for

Summary Judgment [Doc. 46] is GRANTED, Defendant D'Anna Liber's Motion for

Summary Judgment [Doc. 47] is GRANTED, and Defendant Walker Solomon, II's

Motion for Summary Judgment [Doc. 48] is GRANTED.

SO ORDERED, this 10 day of April, 2006.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge